Under the provisions of Act No. 185 of 1944, school bus operators who have served satisfactorily in the employ of any parish school board for more than three consecutive years become regular and permanent school bus operators in the employ of the school board of the parish in which they work. In order to acquire tenure under the act it is necessary that each *Page 833 
personally operate and drive the school bus he is employed to operate.
Should his services be found unsatisfactory during the probationary period of the first three years for which he is employed, he can be discharged or dismissed by the parish school board upon written notice given to him in writing. If he has attained tenure he cannot "be removed from his position except upon written and signed charges of wilful neglect of duty, or incompetence, or immorality, or drunkenness while on duty, or physical disability to perform his duties, or failure to keep his transfer equipped in safe, comfortable and practical operating condition, and then only if found guilty after a hearing by the School Board of that Parish in which" he is employed. Further it is provided by the act, that any hearing under its terms "may be private or public at the option of the School Bus Operator." The act further requires that he "shall be furnished by such school board at least fifteen days in advance of the date of said hearing, with a copy of the written grounds on which removal or discharge is sought." Further, he is given the right to appear in his own behalf and with counsel of his selection, all of whom shall be heard by the board at the hearing.
Claiming that they are school bus operators for the parish of East Baton Rouge, all having qualified as permanent school bus operators under the provisions of the law, the twenty-nine plaintiffs in this suit, after alleging that they were illegally discharged by the school board of the parish of East Baton Rouge on September 6, 1946, pray in their petition that they be re-instated and they obtained from the district court an order for an alternative writ of mandamus directed to the said board, through its president, Karl V. Dawson, and also to Clark L. Barrow, superintendent for schools of said parish, ordering them to reinstate them to their position of school bus operators and further returning to them the functions and emoluments of their position as such, or else, to show cause to the contrary.
They allege that on or about August 21, 1946, each received a communication from the superintendent of schools advising them that he was charging each and every one with wilful neglect of duty; that the president of the school board had advised him that he was going to call a meeting of the school board on September 6, 1946 for the purpose of having a hearing and trying the charges that were preferred against them and that the letter addressed to them contained an enclosure dated August 21, 1946, written by the said superintendent to the president of the board preferring charges of wilful neglect of duty and requesting that a meeting of the board be called not later than September 6, 1946, to hear said charges.
They then allege that they never received any official notice of trial on the charges, setting forth specifically the date of the meeting and where it was to be held, all of which they were entitled to under the terms of Act No. 185 of 1944.
They allege that on information and belief a meeting of the school board was held on September 6, 1946, charges were heard against them by the board without their being present or represented by counsel and therefore the verdict or judgment rendered at that hearing is altogether illegal, null and void. In the alternative they aver that should it be held that the action taken at the said meeting was legal, that the judgment or decision taken by the board was without legal foundation, not being sustained by a preponderance of evidence or as a matter of fact by any legal evidence. Also they plead in the alternative that they were not given the opportunity to submit witnesses to testify on their behalf and were put in the position of having to accept the arbitrary decision of the board.
Further pleading in the alternative they set out that they were under no duty to appear at the numerous meetings previously had by the board and that they were not guilty of the charge of wilful neglect of duty in failing or refusing to sign a one-sided and illegal contract which had been submited to them by the school board, especially as their active work and duty with the board had ceased with the closing of *Page 834 
the school year of 1945-46 and their duty under any contract of employment did not commence again until the beginning of the school year 1946-47.
In answer to the rule, the school board of the Parish of East Baton Rouge appeared and filed an exception of no right or cause of action, on which the court reserved its ruling. Answer was then filed on behalf of both the school board and Clark L. Barrow the superintendent, under reservation of the exception.
In their answer the defendants denied that the plaintiffs were regular and permanent school bus operators in the employ of the parish school board and had never acquired tenure. Further answering they alleged that on August 21, 1946, the superintendent addressed a communication to each of the plaintiffs in which each was sent a copy of the charges of wilful neglect of duty and a letter advising each that a meeting of the school board was being called on the second floor of the courthouse, at 9 o'clock a.m., September 6, 1946, for the purpose of hearing and trying the charges, each of the plaintiffs being advised further that he or she had the right to appear at the meeting in his or her behalf or with counsel of his or her own choosing and that the hearing would be public or private at the option of each. This communication was addressed to each of the plaintiffs by registered mail and was received by each as shown by the return receipt signed by each.
The defendants then aver that all of the plaintiffs were present at the courthouse at 9 o'clack a.m., on September 6, 1946 and were represented by counsel and although they were all invited to the meeting they all refused to attend knowing full well why the meeting was being held.
Defendants then set out that it was their duty, as the parish school board, to prepare during the summer vacation for the school term which was to open in the fall, and among their duties was the one which required them to furnish transportation for the school children of the parish. That in the pursuance of their said duties the board had adopted certain policies and requirements with reference to school buses and school bus drivers. A circular containing these policies and requirements was mailed to each bus operator including all of the plaintiffs, and each was sent a blank to fill in to suit his or her own particular case, all as more fully appeared in the circular mailed to them and dated June 17, 1946. Each of the plaintiffs was asked to answer the circular and they each failed, refused and neglected to do so. The remaining paragraphs of the answer contain recitals of a series of circulars following the one of June 17, 1946, further outlining the policy of the school board with regard to bus operators and requesting either an answer or a personal interview, all of which were totally ignored by each and everyone of the plaintiffs and that finally, in desperation, as the fall season for the opening of school was fast approaching, it was found necessary to prefer charges of wilful neglect of duty against each of them and the meeting of September 6, 1946 was called for the purpose of a hearing. Defendants annexed to their answer copies of the various circulars and notices addressed to each of the plaintiffs.
Upon trial of the rule for mandamus, the district judge ruled in favor of the defendants, dismissing plaintiff's suit and rejecting their demand at their costs. From the judgment rendered plaintiffs took this devolutive appeal.
[1] The facts in the case are hardly disputed and these plaintiffs seem to rely, in a large measure, on several technical points of law. First they contend that the charges made against them were too vague and indefinite and that there are nor specific allegations showing how they were guilty of wilful neglect of duty. That, is will be noted, is only one of the several charges enumerated in the statute under which the school board could have them removed. They seem to contend that they did not neglect any of their duties as bus operators because all that they are charged with are matters that transpired during the vacation period of school and that they had no duties to perform in relation to their position as school bus drivers other than during the school period. We are unable to agree with that contention became *Page 835 
whilst it may be true that their active duties as drivers of buses, that is, transporting school children to school, takes place only during the school period, it undoubtedly was incumbent upon them, as it was also incumbent upon the school board, to prepare during the vacation period for the transportation of the children at the time the school term began.
In this case it seems as though the school board, in line with school boards in various other parishes throughout the state, was considering a change in its policy regarding the ownership of school buses used in transporting the children. Apparently, the board had decided to change from private ownership of the buses by the school bus drivers to public ownership by the school board itself and having contracts with the school bus operators for the driving of the buses only. Because of the difficulty experienced in buying any automotive vehicle at the time, including school buses, it was obvious that the process involving the change would be one covering a rather long period of time. The school board realized this and adopted a method which it thought was practical and reasonable and it seems that it was when it began to propose this method to the school bus operators that some of them, including all these plaintiffs, became recalcitrant. The School Board, through the superintendent and the manager of transportation, began by addressing communications to all of the school bus operators asking them to answer certain questions regarding the ownership of their buses and if they were willing to co-operate with the board in its policy about the change of ownership. These plaintiff's all refused to answer the first communication that was addressed to them. This was followed up by several communications of a similar nature, requesting a reply or a personal interview with the superintendent or the manager of transportation, which all of them again refused to give. In the meantime, through their representative, they proposed a new contract with the school board which was not at all in line with the policy the school board had adopted and which, the testimony of the superintendent, would have involved the board into an expenditure which it could not stand. Their representative was notified to this effect and this was followed again by more communications addressed to all of them, by registered mail, asking them once more to indicate their attitude with regard to the situation which they were advised was then becoming imminent by reason of the passage of time. These again were all ignored and finally the school board found it necessary to take the action it did by calling the hearing of September 6, 1946.
[2] We are of the opinion, in view of all the matters just stated, that it was the duty of these school bus operators at least to reply to the communications addressed to them or to have a personal interview with the school authorities in order that the school board on its part could be prepared at the beginning of the school term in September to provide the necessary transportation for the school children of the parish. In their failure to perform this duty we hold that they could be charged with neglect of duty and certainly under the facts presented, and which are not disputed, it was a wilful neglect of that duty.
[3] Another contention made on behalf of these plaintiffs in the lower court and which does not seem to be raised before us is that they did not receive the notice of hearing from the president of the school board; that it was sent to them by the superintendent of education who had no authority himself to send it. We do not find anything in the act which requires that the notice be sent by the president of the school board instead of by the superintendent. With regard to that point the act reads that the bus operator "shall be furnished by such school board * * * with a copy of the written grounds on which removal or discharge is sought." A notice coming from the superintendent directed by the school board itself, certainly complies with the requirements of the act in that respect. The notice in this case to each of the plaintiffs specifically states that the president of the school board has advised the superintendent that he is calling a meeting of the school board for the purpose of hearing and trying the *Page 836 
charge of wilful neglect of duty made against each of them. That, it occurs to us, is the proper way in which the notice should have been furnished and it certainly comes within the requirements of the statute.
The next point, and the one which seems to be stressed more than any, is that the notice given did not comply with the requirements of the statute because it was not given at least 15 days in advance of the date set for the hearing. It is strongly urged that the day on which the notice is dated, that is August 21, 1946, is not to be included in computing the 15 days, nor should the date of the meeting itself be included, and that being so, the interval between August 22nd and September 5th, was a period less than 15 days and therefore there was lack of compliance with that part of the statute. With regard to some of the plaintiffs it is further stated that they did not receive the notice until August 23, and therefore as far as they are concerned there was certainly less notice than the 15 days required.
[4] A good bit of argument is devoted to this point by counsel for both sides, it being contended by counsel for the school board that under the wording of the statute to the effect that notice "shall be furnished by such school board at least fifteen days in advance of the date of said hearing", the moment the notice had been placed in the post office by registered mail, the, 15 days began to run. Counsel for the plaintiffs, on the other hand, insists that the time did not begin to run until the receipt of the notice. Be all that as it may, we do not find it necessary to have to pass on these technical contentions because we agree with the learned trial judge that these plaintiffs, having all appeared at the time and place designated for the meeting on September 6, 1946, in person and also through their counsel, they had in effect waived the time required under the statute for the notice and they are now estopped from making that contention. The testimony shows that when the board convened for its meeting to conduct these hearings at the designated place and time, the plaintiffs were all present in the corridor of the courthouse adjoining the room in which the meeting was being called; that none of them entered the room and upon being requested to attend the meeting they each and all refused. Even then, they gave the school board no idea, as far as the record discloses, of their intention to contest the hearing on the ground of a delayed notice, or in fact on any ground they now urge. Their presence can be construed in no other manner than that they all had received the proper notice and that they all had been advised of the charges which they would have to defend at the hearing. Their refusal to take any part in the proceedings whatsoever or to make any objections to any part of the proceedings constituted a waiver of all of their defenses and we do not see how they can be heard now to make any of the contentions which they are here advancing in this regard.
[5] Their next contention is that the charges preferred against them were vague and indefinite, there being no specific allegations as to the manner in which they had neglected any official duty. We believe that we have considered this point in our discussion already and clearly a mere reading of the notice furnished to each, in which the whole matter was outlined, again gave them sufficient information on which to defend themselves and as not a single one chose to do so the presumption is that there was sufficient evidence on which to base the action of the school board in discharging them all.
The defendant school board raised two other points in its defense to the suit. One was that some of these plaintiffs had not acquired tenure because they had not personally operated their buses as required under the statute and the other, that all the plaintiffs were guilty of laches in having waited eleven months before instituting suit. In view of the conclusions we have reached on all the other points involved in the case we find it unnecessary to pass on the last two mentioned.
The judgment appealed from correctly refused to grant the writ of mandamus prayed for by the plaintiffs and properly dismissed their suit and it is accordingly affirmed at their costs. *Page 837